IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMIE LONG,                          :

       Plaintiff,

    v.                               :          Case No. 3:24-cv-324

VILLAGE OF PORT JEFFERSON,                       JUDGE WALTER H. RICE

       Defendant.                   :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART THE MOTION TO DISMISS FILED BY DEFENDANT VILLAGE OF
PORT JEFFERSON (DOC. #8)

---

Plaintiff Jamie Long ("Plaintiff") filed this lawsuit against the Village of Port Jefferson ("Defendant"), alleging that Defendant violated Plaintiff's Constitutional rights. Doc. #1. Plaintiff is seeking relief under 42 U.S.C. § 1983 for alleged violations of the Equal Protection Clause and the First Amendment. *Id.* at PageID #13–16. Pending before the Court is a Motion to Dismiss filed by Defendant. Doc. #8. Plaintiff filed a response in opposition, Doc. #11, and Defendant has filed a reply in support of the motion. Doc. #12. This motion is now ripe for review.

For the reasons set forth below, the Motion to Dismiss filed by Defendant Village of Port Jefferson, Doc. #8, is SUSTAINED IN PART and OVERRULED IN PART.

I.    **Legal Standard**

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the [opposing party] has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on the motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Treesh*, 487 F.3d at 476.

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim

2

crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief." *Id.* at 679.

To survive to the discovery phase, a plaintiff need only establish that the pleadings be plausible, not probable. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011). "Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." *Id.*

## II.    Procedural and Factual Background

Plaintiff Jamie Long is a resident of and a councilman for the Village of Port Jefferson. Doc. #1, PageID #1. Between June 17, 2014, and April 11, 2023, Plaintiff resided in a house in Port Jefferson. *Id.* However, in April 2023, Plaintiff sold his house and in June 2023, he bought a vacant lot in Port Jefferson with the intent to build a new residence there. *Id.* Since his previous house had been sold and his new house was only in the planning stages, Plaintiff slept in his truck on a lot in Anna, Ohio, when he was not traveling for work. *Id.*

3

In addition to serving on the village council, Plaintiff volunteered with the Port Jefferson Community Fire Company ("PJCFC"), a volunteer fire department which served Port Jefferson and the surrounding area. Doc. #1, PageID #1, 3. Plaintiff's advocacy for the PJCFC became a point of contention between Plaintiff and the Mayor of Port Jefferson, Mayor Butterfield ("Mayor"). *Id.* at PageID #3. Plaintiff was a frequent critic of the Mayor, criticizing him for "frequently pulling people over to tell them to slow down or request citations from the Shelby County Sheriff, forbidding certain villagers to speak at village meetings, promising the police officers a raise without village council approval, harassing minor children," and other actions that Plaintiff considered to be abuses of power. *Id.* at PageID #2.

Plaintiff resigned from the village council in May 2023 after he sold his house in Port Jefferson. *Id.* at PageID #2. At the August 7, 2023, village council meeting, Plaintiff informed those in attendance that he had purchased the new lot in Port Jefferson and intended to build a house there. *Id.* at PageID #3. Additionally, Plaintiff requested to be reappointed to the village Council. However, the motion was tabled due to the Mayor's understanding of state-mandated residency requirements for council members. *Id.*

During the January 2024 village council meeting, Plaintiff was reappointed to the village council and was thereafter elected as council president, both over the opposition of the Mayor. *Id.* at PageID #5. The Mayor's opposition to Plaintiff's

4

reappointment concerned the proper application of Ohio Rev. Code § 731.12,[1] an issue on which he subsequently sought the village solicitor's opinion. *Id.* The village solicitor responded that "it is the opinion of your Village Solicitor that anyone serving on Village Council must be a resident of Port Jefferson and must have resided there for one (1) year prior to being elected to said position." *Id.* at PageID #6.

The Mayor requested that both the Port Jefferson Police Chief and the Shelby County Sheriff attend the February village council meeting. *Id.* During the meeting, both the Mayor and the village clerk warned the council of Plaintiff's potential disqualification issue, but no action was taken. *Id.* Meanwhile, the council passed ordinance 2024-1 at the Mayor's request, which prohibited street parking of vehicles and trailers in the village. *Id.* at PageID #7. The Mayor stated that the goal of the ordinance was to prompt the removal of a camper that had been parked on a village street for two years, though the Mayor also confirmed that the ordinance would apply to Plaintiff's excavator trailer that he had been using to clear his new lot. *Id.* Plaintiff removed his trailer to comply with the ordinance, but when asked why

---

[1] The relevant portion of the statute reads: "Each member of the legislative authority of a village shall have resided in the village one year immediately preceding the member's election, and shall be an elector of the village." Ohio Rev. Code § 731.12.

other vehicles remained on the village streets in defiance of that ordinance, the Mayor reported that he was not enforcing the ordinance at that time. *Id.*

The issue of Plaintiff's disqualification to serve as a council member came to a climax during the April council meeting. The village solicitor appeared and gave his report on the issue, to which one councilmember, Loretta Cook, asked Plaintiff to resign. *Id.* at PageID #8. Plaintiff refused and Cook subsequently quit the village council and left. *Id.* The council then took a vote on whether to permit Plaintiff to continue serving on the council which ended in a tie. *Id.* The Mayor broke the tie as an *ex officio* member of the village council and permitted Plaintiff to retain his position. *Id.* at PageID #9.

In July 2024, the Mayor brought a complaint to the Shelby County Sheriff, asking him to investigate potential voter fraud committed by Plaintiff. *Id.* at PageID #10. The thrust of the Mayor's complaint was that Plaintiff had voted in two elections using the address of his new, but still vacant, lot where he was not yet residing. *Id.* After investigation, the Shelby County prosecutor declined to bring charges against Plaintiff. *Id.* at PageID #11.

During all of this, Plaintiff sought to obtain a building permit that would allow him to build his new cabin. Plaintiff's initial inquiry to the Mayor about the process occurred in December 2023, and went unanswered. *Id.* at PageID #4. In January 2024, following another query, Plaintiff was told by the Mayor that Port Jefferson

6

does not handle the building permits. *Id.* In response to an inquiry in February, the Mayor replied that Plaintiff did not need a permit for residential property within the village. *Id.* at PageID #6. In March, the Mayor stated that the Miami County Department of Development handled the building permits for Port Jefferson. *Id.* at PageID #7. Plaintiff contacted the Miami County Department of Development and was told that they were not responsible for the building permits. *Id.*

In May 2024, Plaintiff presented the Mayor with a building permit. *Id.* at PageID #9. The Mayor refused to grant the permit, stating that the permit was incorrect. *Id.* The Mayor also informed Plaintiff that his new cabin would be subject to a 6-foot setback[2] under an applicable zoning rule, but that the council could vote to reduce the setback to 3 feet. *Id.* In June 2024, Plaintiff presented the Mayor with a new building permit which was also refused. *Id.* Plaintiff did not meet with the Mayor about the building permit in either July or August 2024. *Id.* at PageID #9–10. At a September 9, 2024, council meeting, the council voted to approve Plaintiff's building permit and at a subsequent emergency council meeting on September 16, 2024, the council voted to reduce the setback from 6 feet to 3 feet. *Id.* at PageID #11–

---

[2] A zoning setback requires that any structures built on a lot leave a specified distance between the edge of the structure and the edge of the lot. The village clerk provided a diagram to Plaintiff, included in the Complaint, showing that the lot required a 6-foot setback on the sides and a 26-foot setback on the front and rear of the property. Doc. #1, PageID #12.

12. The Mayor resigned from his position on September 16, 2024, and passed away on September 20, 2024. *Id.* at PageID #12.

Plaintiff brings two claims here: (1) Violation of Equal Protection Clause for Disparate Treatment ("Claim One"); and (2) First Amendment Retaliation ("Claim Two"). Doc. #1, PageID # 13–16. Both claims are brought under 42 U.S.C. § 1983 which provides a private right of action against government officials who violate a plaintiff's Constitutional rights. Defendant then filed this Motion to Dismiss which is now ripe.

## III. Analysis

Plaintiff's claims are both brought under the theory that the Mayor, and by extension the Village of Port Jefferson, violated his Constitutional rights. As a result, there is a great deal of overlap between the claims and the alleged actions that give rise to the claims. For example, Plaintiff cites four examples of actions the Mayor undertook which give rise to his claim for disparate treatment: (1) refusal to swear Plaintiff in as council president; (2) selective enforcement of Ordinance 2024-01; (3) creation and enforcement of the setback rule; and (4) intentional delay and obstruction with regard to Plaintiff's building permits. Plaintiff's claim for retaliation, meanwhile, rests on five examples: (1) refusal to swear Plaintiff in as council president; (2) selective enforcement of Ordinance 2024-01; (3) intentional delay and obstruction with regard to Plaintiff's building permits; (4) the use of police

8

officers to try to intimidate Plaintiff into resigning; and (5) an attempt to have Plaintiff prosecuted for voter fraud. Despite the similarities, the elements of both claims differ slightly and it is necessary to examine each claim separately.

Aside from arguments directed specifically at the claims, Defendant also expresses procedural concerns about standing, absolute privilege, and whether the Mayor's actions are attributable to the Village for the purposes of this action. These arguments will be addressed first.

### A. Procedural Arguments

In Defendant's motion, he argues that Plaintiff lacks Article III standing to bring these claims. Doc. #8, PageID #33–37. In response, Plaintiff gives four examples that he claims establish real, actual, and concrete injuries: (1) the delay in housing; (2) fear of arrest; (3) costs associated with moving and storage of the excavator; and (4) wasted time. Doc. #11, PageID #52–55.

The Sixth Circuit has recognized that a claimed injury of wasted time is viable to confer standing under Article III. *Imhoff Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, (6th Cir. 2015); *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 463 (6th Cir. 2019). *Spokeo* did not alter that conclusion. *See Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). In *Spokeo*, the Supreme Court determined that the Ninth Circuit had failed to analyze whether a plaintiff presented a "concrete and particularized" injury sufficient to confer standing and remanded with instructions to make that

9

determination. *Id.* at 342–43. Conversely, the Sixth Circuit has already determined that wasted time can constitute a concrete and particularized injury. Both of Plaintiff's claims rest, at least in part, on claims that the Mayor intentionally wasted Plaintiff's time. This alone is sufficient to confer Article III standing but this Court will also examine Plaintiff's other theories of standing.

Plaintiff alleges that the Mayor's actions delayed his permit approval, costing him both time and resources while he continued to sleep in hotels and parking lots. Doc. #11, PageID #53. Defendant argues that Plaintiff is partly to blame for the homelessness as he voluntarily sold his prior house and did not present a permit application until May 2024. Doc. #12, PageID #66. Plaintiff's actions, though they may have contributed to the total amount of expended resources, do not completely obviate the Mayor's actions. If Plaintiff's allegations are taken as true, the Mayor's intentional delay during the several months the permit application remained pending injured Plaintiff and therefore grant him standing to bring his claims.

Plaintiff's third stated rationale for standing rests on a fear of arrest. He further explains this argument using three examples of actions that the Mayor took himself or caused others to take: (1) directing the police chief and county sheriff to escort Plaintiff to a council meeting where the mayor warned the council "would be in a lot of trouble" if it did not remove Plaintiff; (2) filing a complaint with the county

sheriff alleging that Plaintiff engaged in voter fraud; and (3) causing Plaintiff to be interviewed at the Shelby County Sheriff's Office regarding the Mayor's report. Doc. #11, PageID #53. For the reasons below, the second and third rationales are protected under absolute privilege and do not confer Article III standing. However, Plaintiff's first rationale does provide proper standing. If Plaintiff's allegations are believed, the Mayor instructed two police officers to escort Plaintiff for no readily apparent reason other than an attempt to intimidate Plaintiff to resign his efforts to work on the village council.

The final stated theory of standing involves the costs that Plaintiff incurred through the moving and storage of the excavator trailer. Doc. #11, PageID #54. Defendant's chief argument against this theory of standing is that Plaintiff "was never told that [the ordinance] would be enforced against him or that he had to move his trailer or face a fine." Doc. #12, PageID #68. While a plaintiff must do more than show a subjective fear of enforcement to establish standing, Plaintiff here has met that burden. *McGlone v. Bell*, 681 F.3d 718, 730 (6th Cir. 2012). Plaintiff has alleged that he asked directly asked the Mayor if he had to move the trailer to be in compliance with the ordinance and the Mayor responded in the affirmative. Doc. #1, PageID #6. This rises above mere subjective belief of enforcement and meets the objective belief bar required to confer Article III standing. Taken together, Plaintiff has plausibly alleged Article III standing for both claims he advances.

11

Defendant also argues that absolute privilege protects the Mayor's report to the county prosecutor regarding Plaintiff's alleged criminal activity. Doc. #8, PageID #37. Plaintiff posits that absolute privilege extends only to torts brought under state law like defamation and not to federal claims such as the ones brought here. Doc. #11, PageID #62.

In the Complaint, Plaintiff describes the Mayor's report to the Shelby County Sheriff as an allegation that the Mayor thought that Plaintiff was committing voter fraud during both the November 2023 and March 2024 elections. Doc. #1, PageID #10. The Mayor's allegations were supported by evidence that Plaintiff had sold his residence in Port Jefferson and purchased a new property that did not yet contain a house. *Id.* During this time, Plaintiff was registered as a voter at the new address and was receiving mail at a local P.O. box in Port Jefferson. *Id.* at PageID #10–11.

The Sixth Circuit has not yet addressed absolute immunity in a case like this where the government official merely submits a report to the police of allegedly illegal activity. That said, there is precedent that when the government actor testifies to a grand jury or at trial, a plaintiff needs to show that the government actor either knowingly or recklessly made false statements to rebut the presumption of absolute liability. *Sanders v. Jones*, 728 F.App'x 563, 565 (6th Cir. 2018). A similar requirement is called for here.

Plaintiff does not allege that the Mayor's report contains any factually incorrect information. Plaintiff sold his residence and bought a property with no residence on it. Plaintiff, by his own admission, was spending nights either on the road when traveling for work, in his truck in Anna, Ohio, or in various hotels when his truck needed maintenance. Put plainly, it appears Plaintiff was not residing at the address where he was registered to vote. Whether or not this violates Ohio law is another matter outside this litigation. However, the Mayor's complaint was not knowingly or recklessly false, even if the prosecutor ultimately declined to pursue charges. Therefore, the Mayor's action of reporting what he believed to be illegal actions is protected by absolute immunity and cannot be the basis of a § 1983 claim.

Finally, Defendant argues that the Village is not liable for the actions of the Mayor because Plaintiff fails to allege the existence of a custom or policy of the Village which results in Plaintiff's injury. Doc. #8, PageID #41–42. Plaintiff's response points out that the Mayor was the final policymaker for each of the actions he alleges infringed on his rights. Doc. #11, PageID #60–62.

Whether a municipality is liable for the actions of an official turns on whether the official is responsible for determining the applicable policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). "Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not

constrained by the official policies of superior officials." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). Plaintiff's Complaint properly alleges that the Mayor was the final policy-making entity for several actions taken against Plaintiff. Therefore, Plaintiff has plausibly alleged that Defendant is liable for the actions of the Mayor.

### B.     Disparate Treatment

To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff differently as compared to similarly situated persons and that such disparate treatment either: (1) burdens a fundamental right; (2) targets a suspect class; (3) or has no rational basis. *Center for Bio-ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Plaintiff makes no allegations that they were targeted because of membership in a suspect class and does not directly state that any of their actions were fundamental rights. Instead, Plaintiff makes it clear in his response to the Motion to Dismiss that he intends to pursue a theory of a "class of one" disparate treatment. Doc. #11, PageID #55–57.

A "class of one" claim pursues the third option under *Napolitano* for establishing an equal protection claim. To properly allege a "class of one" claim, a plaintiff must allege that: (1) they have been intentionally treated differently from other similar situations; and (2) there is no rational basis for the difference in treatment. *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Vill. Of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The second element, the lack of rational basis, may be shown by either negating every conceivable basis which may support the action or by showing that the action was motivated by animus or ill-will. *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005).

As the Sixth Circuit explains in *Aldridge*, this "class of one" theory, misnomer as it may be, rectifies the gaping hole that would otherwise exist in equal protection claims. *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010). Though most equal protection claims are brought under theories of discrimination based on membership in a protected class, individuals can be—and are—given unequal treatment due to reasons intrinsic to that individual. *See Enquist v. Oregon Dep't of Ag.*, 553 U.S. 591 (2008) (plaintiff "alleg[ed] that she was fired not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for 'arbitrary, vindictive, and malicious reasons'"). Still, even these claims require comparators to show that the plaintiff was in fact treated differently. *Skilwies v. City of Huber Heights*, 689 F. Supp. 3d 540, 549 (S.D. Ohio 2023).

Plaintiff's Complaint does not lack allegations of animus and ill-will. Plaintiff sufficiently lays out several facts that might cause the Mayor to have animus toward Plaintiff, including the advocacy for the PJCFC, the purchase of the property that the Mayor wanted to turn into a park, and Plaintiff's public criticism of the Mayor.

15

Doc. #1, PageID #2–3. While these allegations do not conclusively establish that the Mayor's actions were motivated by animus, Plaintiff need not make such a showing at this time. At this stage, Plaintiff only has to plead facts which, if believed and if plausible, could support such a claim.

Plaintiff must also allege facts that show that they were treated differently from other individuals similarly situated. In his response, Plaintiff cites to three examples of times when he claims he was singled out by the Mayor: (1) the selective enforcement of Ordinance 2024-01; (2) the setback rule; and (3) the delay to the building permit approval. Doc. #11, PageID #56–57.

According to the Complaint, when Ordinance 2024-01 was passed, Plaintiff asked the Mayor if Plaintiff's excavator trailer would need to be moved and the Mayor responded in the affirmative. Doc. #1, PageID #7. Based on that interaction, Plaintiff moved his trailer. As it turns out, the Mayor did not enforce the Ordinance against any of the other vehicles on the village streets, including the vehicle identified as justification for the passage of the ordinance. *Id.* Plaintiff argues that this resulted in the ordinance being enforced against him but not against any of the other violators in the village. Doc. #11, PageID #56. Yet this argument misses one key fact: the ordinance was never enforced against Plaintiff. Had Plaintiff left the trailer in place and been fined for doing so when no one else was, this case would look different. Likewise, had any other resident asked about enforcement during

16

deliberation of the ordinance and been told not to move their vehicle, Plaintiff would carry his burden. But with the allegations as they are, Plaintiff fails to establish selective enforcement of Ordinance 2024-01.

Plaintiff's allegations that the Mayor deliberately delayed approval of the building permit for his new property also fails to allege disparate treatment. Plaintiff presents no allegations of other permit applications during the same period, nor do they allege previous permit applications that were approved quicker than Plaintiff's effort here. Without any allegations of how others were treated, Plaintiff simply cannot plausibly plead that he was treated differently from those other individuals.

However, Plaintiff succeeds in pleading that he was treated differently from others with regard to the setback rule. In the Complaint, Plaintiff repeatedly discusses the 6-foot and 26-foot setbacks that the Mayor and village clerk claimed applied to Plaintiff's building proposal. Doc. #1, PageID #9, 11–12. Plaintiff also alleges that such a setback rule had never been enforced against any other building project in Port Jefferson. *Id.* at PageID #9. These allegations, if unrebutted and unexplained, could support a valid claim that Plaintiff was treated differently from other similarly situated individuals. When combined with the allegations of the Mayor's animus, this theory plausibly pleads a claim for disparate treatment in violation of the Equal Protection Clause. For that reason, Defendant's motion is OVERRULED with regard to Claim One.

17

### C.    First Amendment Retaliation

To adequately plead a First Amendment Retaliation claim, a plaintiff must show three elements: (1) that he engaged in protected activity; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that there is a causal connection between the first two elements. *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002).

Plaintiff alleges, and Defendants do not seem to refute, that he engaged in protected activity by publicly advocating on behalf of the PJCFC and by criticizing the Mayor for actions taken in his official capacity. Doc. #1, PageID #15. Defendant does, however, argue that Plaintiff has not met his pleading standard for the other two elements. Defendant posits that Plaintiff does not meet their burden under the second element because he did not suffer an adverse action caused by Port Jefferson, i.e., that any alleged action would not chill a person of ordinary firmness. Doc. #8, PageID #40–41. Defendant also argues that Plaintiff's allegations fail the third element as well because any alleged action was not caused by Plaintiff's protected activity. *Id.*

Plaintiff helpfully outlines exactly which actions he alleges were taken in response to his protected activity: (1) the Mayor's refusal to swear Plaintiff in as council president; (2) the Mayor's use of Port Jefferson and Shelby County police officers to intimidate Plaintiff into resigning from the village council; (3) the Mayor's

18

selective enforcement of Ordinance 2024-01 to target Plaintiff; (4) the Mayor's attempt to have Plaintiff prosecuted for voter fraud; and (5) the delay for approval of Plaintiff's building permit. Doc. #1, PageID #15–16. Defendant responds to these allegations by stating either that there was a valid reason for the Mayor's actions or that the actions were not a deterrent. Doc. #12, PageID #71–72.

The Sixth Circuit has recently reiterated that analyzing whether an action is adverse and sufficiently deterring to a person of ordinary firmness in the context of a First Amendment retaliation claim is "generally a question of fact," and therefore, "retaliation claims based on all by genuinely inconsequential official actions should go to the jury." *Cooperrider v. Woods*, 127 F.4th 1019, 1037 (6th Cir. 2025). Nor is there any requirement that an "adverse action" consist only of a single action; a plaintiff may establish a First Amendment retaliation adverse action by showing a cumulative series of conduct. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010); *Lahar v. Oakland Cnty.*, 304 F.App'x 354, 357, 358–59 (6th Cir. 2008).

When viewed in the aggregate, the Court cannot conclude that the Mayor's actions were "genuinely inconsequential."[3] While there may ultimately be valid rationales provided for some or all of the Mayor's actions, the number of allegations and the comparatively short timeframe in which they occurred cannot be ignored.

---

[3] This determination is made without consideration of the Mayor's criminal referral to the county prosecutor for the reasons identified *supra*.

Taking Plaintiff's claims as true, Plaintiff has plausibly pled that the Mayor took adverse actions against him.

A valid causal connection need not show that the protected activity was the *only* reason that the adverse action was taken, only that the adverse action was motivated at least in part by the protected conduct. *Id.* "A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010). Extremely close temporal proximity can permit an inference of retaliatory motive. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

Defendant argues that Plaintiff has failed to allege any plausible facts to support a claim that the adverse actions were motivated by the protected activity. Doc. #17, PageID #41. The Court disagrees. Plaintiff plausibly alleged that the Mayor had animus toward Plaintiff and that adverse actions occurred. Doc. #1, PageID #3, 5–6, 8. Additionally, the temporal proximity outlined by Plaintiff supports a plausible claim of causation.

At this stage, Plaintiff has pled sufficient facts to present a plausible claim for First Amendment retaliation. For that reason, Defendant's motion is OVERRULED with regard to Claim Two.

Finally, Defendant's motion seeks dismissal of Plaintiff's claim for punitive damages. Doc. #8, PageID #42. Plaintiff concedes that the law does not permit him to seek punitive damages. Doc. #11, PageID #63. Therefore, Defendant's motion is SUSTAINED as it relates to Plaintiff's claim for punitive damages.

## IV. Conclusion

For the reasons set forth above, the Motion to Dismiss, Doc. #8, is SUSTAINED IN PART AND OVERRULED IN PART. Specifically, Plaintiff's claim for punitive damages is DISMISSED and all other claims may proceed.

Defendant's Answer to the Complaint shall be due 30 days from the issuance of this decision.

Date: April 9, 2025                     _Walter N. Rice_____

                                        WALTER H. RICE
                                        UNITED STATES DISTRICT JUDGE

21